B. S. Prettyman *et al.*, Plaintiffs in Error, *v.* L. H. Wilkey *et al.*, Defendants in Error.

| 19 | 235 |
| 25a | 163 |

| 19 | 235 |
| 152 | 121 |

| 19 | 235 |
| 156 | 74 |

ERROR TO TAZEWELL.

Where it appeared that A. and B, being in A. D. 1831. the owners of two town lots, conveyed the same to C, to hold and convey for the purpose of paying certain debts due from A and B to C and others; that C, the same year, executed a power of attorney to D to attend to the trust duties confided to C; that D, with the knowledge of A, B and C, sold and conveyed the lots to E and F, in his own name, but referring, in the deed, to his power; that C received the purchase money; that E conveyed his interest in the lots to F and G; that E and F, and all claiming under them, have been in actual possession of the lots since 1831, claiming in fee simple — it was held that a person holding the legal title, with a knowledge of the foregoing facts, cannot override the equities of the holders under the title from D; the adverse possession was notice of such equities.

Although the actual improvements were upon but one of the two lots, yet, as they were held under the same title adjoined, the possession was actual of both lots as one premises.

D, who acted as agent in the sale aforesaid, was a competent witness for the parties holding under his sale.

The words "grant, bargain and sale," under our statute, in a conveyance, only amount to a covenant, that the grantor has done no act, nor created any incumbrance, whereby the estate granted can be defeated. It is a covenant against the acts of the grantor.

This was a bill in chancery, heard before Harriott, Judge, at October term, A. D. 1857.

The complainants, L. H. Wilkey, William B. Doolittle, Anna Maria Doolittle, and Irwin B. Doolittle, children and heirs at law of Irwin B. Doolittle, deceased, Charles Yackle, Rawley S. Doolittle and Peter Menard, Jr., Edward Menard, Nathan S. Menard, Lewis Cypian Menard, George H. Kennely, Modesti A. Kennely his wife, Theresa B. Cheauteau, Mary Radford, and Mary O. Maxwell, heirs at law of Peter Menard, Sr., filed their bill, charging,

That Samuel P. Baily and James Baily, on the 10th of June, 1831, being the owners in fee of lots 15 and 16, in block 37, in Pekin, Illinois, by deed of that date conveyed said lots to one Daniel M. Baily, in trust for the benefit of creditors. That on the 11th of October, 1831, said Daniel M. Bailey, by a power of attorney, empowered one Joshua R. Stanford to execute certain trusts of said deed of the goods and effects of James Baily & Co.; that afterwards, in pursuance of said power of attorney, said Stanford sold said lots to complainants, Rawley S. Doolittle and Peter Menard, Jr., by their firm name of Menard & Doolittle, and received the money therefor, and D. M. Baily had knowledge that the lots had been sold and conveyed by Stanford, and that four hundred dollars were the proceeds of the sale. That soon after Rawley S. Doolittle and

Peter Menard, Jr., in pursuance of the sale, entered into the possession of said lots, and have had the undisturbed possession thereof ever since, and made valuable improvements thereon, previous to 1850 ; that after taking possession as above stated, the lots were sold at sheriff's sale, and bid in by P. Menard, Sr. That P. Menard, Sr., died, leaving certain persons (above named) his heirs at law. That after said last sale, Irwin B. Doolittle and William B. Doolittle, trusting that P. Menard, Jr., would procure the legal title from the remaining heirs of P. Menard, Sr., contracted with him for the purchase of said lots, · and took possession of the same, and, in 1849, leased lot 16 to L. H. Wilkey, and gave him possession. That on the 22nd of January, 1850, P. Menard, Jr., by deed of that date, conveyed said lots to William B. and Irwin B. Doolittle.

That Irwin B. Doolittle died, leaving certain persons (above named) his heirs at law.

That Daniel M. Baily, after the time of the above mentioned conveyance, came to Pekin, and has resided there ever since, and had full knowledge that the occupants of said lots were claiming title through the conveyance of said Stanford ; that on the 25th of February, 1850, while L. H. Wilkey (above named) was in possession of said lot 16, and William B. and Irwin B. Doolittle were in possession of lot 15, and while one Thomas C. Reeves had full knowledge of said possession and claim of title under which such possession was held, said D. M. Baily sold and conveyed said lots to said Reeves.

That said Reeves afterwards commenced actions of ejectment against Wilkey, and William B. and Irwin B. Doolittle, which actions had been decided in favor of the complainants as to costs.

That before said actions were brought to trial, on 1st of May, 1850, Reeves deeded both of said lots to B. S. Prettyman ; said Prettyman having at the time knowledge of the actual possession aforesaid. That after the death of Irwin B. Doolittle, and while Charles Yackle and John Stoltz were holding the possession of said lots as tenants of William B. Doolittle and the estate of Irwin B. Doolittle, said Prettyman commenced (in April, 1851) two actions of ejectment against said Yackle and Stoltz, which actions are still pending and undetermined. That your orators fear they have no legal defense to said actions, because of some merely legal defect in the title, passing from Daniel M. Baily through Stanford to P. Menard, Jr., and Rawley S. Doolittle ; that the conveyance from D. M. Baily to Reeves is a fraud upon the equitable rights of complainants, and was not made for the intended benefit of the creditors of James and Samuel P. Baily, all of which was known to said Prettyman.

That inasmuch as said deed of assignment required said D. M. Baily to proceed with all due diligence to sell said lots for the benefit of creditors, after the lapse of eighteen years, up to the date of the deed to Reeves, it should in equity be presumed in favor of the actual possession of your orators, that the title had passed to them by the execution of the powers of said deed. The bill prayed that James Baily, Samuel P. Baily, D. M. Baily, Thomas C. Reeves, and B. S. Prettyman might be made defendants, and they be enjoined and compelled to convey.

The defendants filed their answer, admitting that at the time stated in the bill, James and Samuel P. Baily were the owners in fee of the lots in question; that they conveyed the same to D. M. Baily as charged, and deny all other charges in the bill, except the death of Irwin B. Doolittle, which is admitted, and that his heirs are correctly stated in the bill, and the conveyance from D. M. Baily to Reeves, from Reeves to Prettyman, and alleges that they were made in good faith—that Menard & Doolittle entered as tenants of James and Samuel P. Baily.

To this answer a general replication was filed.

The death of William B. Doolittle was suggested, and the suit revived in the name of his executor, Middleton Thackaberry, and his legatees, Anna Maria Doolittle, Irwin B. Doolittle, by Jesse A. Nason, their guardian, Mary Doolittle, Martha Doolittle, Rawley S., Amaziah, and George W. Doolittle.

The bill was dismissed as to the heirs of Peter Menard, Sr., and a decree in favor of the complainants.

The complainants gave in evidence a deed from James and Samuel P. Baily to Daniel M. Baily, dated June 10th, 1831, reciting that whereas the said James and Samuel P. Baily were largely indebted, and, among others, to Daniel M. Baily, in consideration thereof, granted, bargained and sold to said D. M. Baily, among other property, two lots and a house thereon, situate in the town of Pekin, county of Tazewell, Illinois, being the same acquired from Orrin Hamlin, to have and to hold the said lots to him, the said D. M. Baily, his heirs and assigns, forever, in trust; and also assigned some accounts due them, also in trust for the benefit of the creditors of S. P. Baily; that the said D. M. Baily might sell said lots at public or private sale for cash or on credit, for said use and trust, and no other.

And the said D. M. Baily covenanted to proceed with all due diligence to dispose of said lots and apply the proceeds in the payment of debts, and the surplus pay James and Samuel P. Baily, which was recorded September 12, 1831.

Also a deed from D. M. Baily to J. R. Stanford, reciting that D. M. Baily had constituted and appointed J. R. Stanford his attorney to transact all business between him and the late firm

of James Baily & Co., whether such business should relate to said D. M. Baily in his individual capacity or as assignee of the goods and effects of James Baily & Co., and to transact any business in any way connected with him in any of the Western States, and to do any thing relating to the premises that Baily himself might do, although the matter might require more special authority than was thereby conferred ; in witness whereof, the said Baily set his hand and seal, October 11th, 1831 ; and which was recorded December 6th, 1831, acknowledged before a notary public, and certified under his seal of office.

The defendant objected to reading the paper in evidence, because it did not appear from the record book in which it was recorded, that there was any seal to it at the time of record ; on the original paper itself is a wafer with a small piece of blank paper stuck over it, at the right hand of Baily's name ; and also for the reason that Baily had no right to appoint an agent to sell and convey the lots in question, but both objections were overruled, to which the defendant excepted.

Also a deed from Joshua R. Stanford to Menard & Doolittle, reciting that Joshua R. Stanford, acting in the capacity of attorney of Daniel M. Baily, in consideration of the sum of four hundred and one dollars, granted, bargained, sold, and forever quit-claimed to the said Menard & Doolittle, and to their assigns, all the right, title and interest he had to the lots in question, being the same conveyed to me by deed of trust or assignment made by James and Samuel P. Baily ; witnessing that he had set his hand and seal thereto, December 6th, 1831, as attorney for D. M. Baily ; recorded December 8th, 1831.

A deed from P. Menard, Jr., to William B. and Irwin B. Doolittle, dated 22nd January, 1850, and recorded.

*Merriman* stated, in his deposition, that there was a former suit, in which he was counsel between the same parties about the same matter ; that D. M. Baily answered the bill defectively, and he excepted to the same, which exceptions were sustained; that about that time, he had a conversation with D. M. Baily, in which Baily said the bill did not make the point desired to be arrived at. Witness told him he would draw his answer so as to elicit the facts, if he knew what they were, to which Bailey assented, and said his attorney would not draw the answer as he wanted. He then said Stanford was his agent in the business of an assignment by James Baily & Co, of which the lots in controversy formed a part ; that Stanford sold them and got the money ; that Stanford informed him of the sale, and wanted $100 for his services in the business, over and above the amount remaining in his hands ; that Baily told him he thought he had enough.

*Stanford,* in his deposition, stated that the power of attorney was genuine; that he was the person named therein; that he executed a quit-claim deed, after the sale, to the purchasers, Menard & Doolittle, as he supposed he was authorized to do under the power of attorney, and received the purchase money—four hundred or four hundred and one dollars; that he gave Mr. Baily information of such sale by a written statement, and also by letter; remitted Baily two hundred dollars, and gave him credit in account with the rest, which did not fully pay him; that Baily must have known that the money sent him was the proceeds of the sale of said lots; but for that he could not make him any remittance; that Baily made no objection to the matter.

It was admitted that Reeves had lived in Pekin since 1847, D. M. Baily since 1837, and Prettyman since 1845; that Wm. B. and Irwin B. Doolittle had died, as stated in the bill; that their representations are correctly stated therein; that James and Samuel P. Bailey were, at the time stated in the bill, owners in fee of the lots in question.

*David Mark* sworn on part of complainants. Witness came to Pekin September, 1831. The lots were sold, by Stanford, to Menard & Doolittle for $400. The house is on lot 16. At the time, and after the sale, Robert Alexander occupied the front part of the house, and Benjamin Doolittle and his family occupied the rest. At that time, Menard & Doolittle did business at another place. About a year after the sale, they moved into the house, and occupied it about three years. Don't know under whom the subsequent occupants claimed.

*Samuel P. Baily* was sworn, after order obtained for that purpose. I was partner with James Baily till the spring of 1831, and party to the deed of trust to Daniel M. Baily. I came to Tazewell county to reside August, 1831; saw Stanford about the 5th of December of that year. He came to my residence—brought a letter from D. M. Baily. Rawley S. Doolittle had refused to pay a balance of rent due from Menard & Doolittle of $29. I informed Doolittle it was all right to pay it. This was rent for the house on lot 16, and the day before sale. Doolittle & Menard were then in possession of said house, under James Baily, at the rate of $125 per year, and had been long enough to have $29 rent due. There was a house on lot 16 at the time of the sale; but lot 15 was never occupied until the commencement of the ejectment suits by Prettyman. Menard & Doolittle, by themselves or tenants, have continued in possession of lot 16 up to the present time. I have no interest in this suit.

*D. M. Baily,* on part of defendant, under order for the pur-

pose. I am grantee in the deed from James and Samuel P. Baily—know Stanford. All I received from Stanford was $200, that I loaned him. He made collections to amount of five or six hundred dollars outside of the sale of the lots. I never got a settlement with him. He never represented to me that the $200 was part of the proceeds of the sale of the lots; he never represented that any money he paid me was from the sale of the lots. Reeves paid me $400 for the lots.

The defendants also proved, by the records, that the lots had been sold for tax in 1841, and bought by P. Menard, Jr., and redeemed by D. M. Baily, as assignee of James and S. P. Baily. Also a deed from D. M. Baily to Reeves, and from Reeves to B. S. Prettyman, all duly recorded and in due form.

*Jonathan Haines* was sworn on part of complainants. Know Menard & Doolittle; they kept store near where the farmers' warehouse now stands, till the spring of 1832, when they moved to the lots in controversy. They hired me to finish off the storehouse on lot 16. Robert Alexander had a store and post office at the time they bought in the building. Benjamin Doolittle also lived in part of the house at the time it was bought by them.

*Joseph B. Worley*, sworn for complainants. Knew Menard and Doolittle in 1830—frame was up on the corner lot. Benjamin Doolittle lived in the house, or part of it, next after witness, who occupied it two or three months in the fall of 1830. Orrin Hamlin then owned the house. Menard & Doolittle, at this time, were keeping store on the river bank, but moved to this building some time during the next season after I lived there. Can't say positively whether they moved before or after the Black Hawk war; think it was before.

B. S. PRETTYMAN, for Plaintiffs in Error.

A. L. DAVISON and JAMES ROBERTS, for Defendants in Error.

SKINNER, J. This was a bill in equity, to enjoin the recovery of two lots in the city of Pekin, and to obtain a conveyance of the legal title to the complainants.

The case shows that S. P. and James Bailey, being the owners of the lots in 1831, conveyed the same to D. M. Baily, to hold and convey the same for the payment of certain debts of the grantors, due to the *grantee* and others; that D. M. Baily, the same year, executed to Stanford a power of attorney, to attend to the trust duties arising out of the deed; that, under the power, Stanford, in 1831, with the knowledge of the Bailys, sold and conveyed the lots to Menard & Doolittle, executing a

deed to them, referring for authority to the power, but in his *own name;* that D. M. Baily knew of the sale, and received the purchase money ; that Menard conveyed his interest in the lots to Irwin B. and William B. Doolittle, under and through whom the complainants claim title ; that Menard & Doolittle, and those claiming under them, have been in actual possession of the lots since 1831, claiming in *fee simple;* that in 1850, D. M. Baily executed a deed for the lots to Reeves, who conveyed to Prettyman, and that S. P. and James Baily, in 1850, also executed a deed for the same to Prettyman; that Prettyman, since 1845, Reeves, since 1847, and D. M. Baily, since 1837, have had actual knowledge of the adverse claim and possession of Menard & Doolittle, and those claiming under them ; that S. P. Baily was present at the sale by Stanford, in 1831, and has since resided in Pekin.

The actual improvements were confined to one of the lots, but the lots adjoined, and were held as one property, under the deed executed by Stanford, under the power, to Menard & Doolittle. The possession, therefore, was actual of both lots as one premises, though described in the deed as lots "15 and 16," etc. *Brooks* v. *Bruyn,* 18 Ill. R. 539 ; *Davis* v. *Easely,* 13 Ill. R. 192 ; 14 Ill. R. 244 ; 15 Ill. R. 271.

This possession existed at the time of the execution of the deeds under which Prettyman claims, and although by such deeds Prettyman may have acquired the legal title, the adverse possession was notice of the equities of the complainants, and his legal title cannot, therefore, override those equities. *Mc-Connel* v. *Reed,* 4 Scam R. 123 ; ibid. 152 ; 5 Gilm. R. 186 ; *Rupert* v. *Mark,* 15 Ill. R. 542.

It is unnecessary to decide whether the trustee, D. M. Baily, to whom the property was conveyed to be sold to pay the debts of the grantors, could delegate that power to Stanford. D. M. Baily, in whom the title was vested, ratified the sale by receiving the purchase money, and the Bailys who made the trust deed knew of the sale by Stanford and payment of the purchase money ; and they and D. M. Baily, the trustee, after acquiescence for more than eighteen years, during which time there was active possession under the sale made by Stanford, under supposed power, cannot now allege a defect of power in Stanford. Their acquiescence is an estoppel, both as to them and those claiming under them, adversely to the complainants, and who purchased with notice of the equities derived from the sale by Stanford. 1 Story's Eq. Jur., sec. 385 ; *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. R. 344 ; *Storrs* v. *Barker,* 6 ibid. 166 ; *Town* v. *Needham,* 3 Paige's R. 545 ; *Skinner* v. *Dayton,* 19 John. R. 513.

However defective the deeds of conveyance under which the complainants claim may be, or the execution of the power by Stanford, if the power could be delegated by D. M. Baily, the trustee, they will be corrected in a court of equity.

Stanford was a competent witness for complainants. The deed executed by him to Menard and Doolittle was a deed of quit-claim, containing the words "*grant, bargain and sell.*"

These words are held to amount only to a covenant that the grantor has done no act, nor created any incumbrance, whereby the estate granted by him could be defeated. In other words, to a covenant only against his own acts.

Our statute is a copy of the Pennsylvania act of 1715; and that act was so construed by the courts of that State at the time of its adoption in this State. We, therefore, adopt the construction which before had been given the same words, and we are satisfied it is the only true interpretation of the words. *Lessee of Gratz* v. *Ewalt*, 2 Binney R. 95; *Roebuck* v. *Dupey*, 2 Ala. R. 541; Rawle on Covenants, 401 to 412.

We discover no error in the record.

*Decree affirmed.*